

**MICHAEL VANUNU**
Partner
(516) 357-3337
michael.vanunu@rivkin.com

WWW.RIVKINRADLER.COM

August 29, 2021

**VIA ECF**
Marcia M. Henry
United States Magistrate-Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Gov't Emples. Ins. Co., et al. v. Karin Gepp Ph.D. (A Sole Proprietorship) et al.
        **Docket No. 1:22-cv-02860-ARR-MMH**

Dear Magistrate Judge Henry:

Plaintiffs (hereinafter "GEICO" or "Plaintiffs") respectfully submit this letter in opposition to the motion of non-party, Law Office of Eitan Dagan, P.C.'s ("Dagan") seeking to quash GEICO's subpoenas to: (i) Dagan (the "Dagan Subpoena"); and (ii) Signature Bank, N.A. for bank records pertaining to Dagan's IOLA account (the "IOLA Subpoena", with the Dagan Subpoena, the "Subpoenas"). As discussed below, the Subpoenas are permissible forms of third-party discovery that were narrowly tailored both temporally and regarding the types of documents sought.  Dagan's objections fail to withstand any scrutiny, and of significance, neither Defendants Karen Gepp ("Gepp"), Karin Gepp, Ph.D. (a Sole Proprietorship) ("Gepp Practice"), nor Gepp Psychological Services, PLLC ("Gepp Psychological") (i.e. the purported clients of Dagan) have objected to GEICO's subpoenas or sought to have them limited in any way. The Defendants' lack of objections raise the question: who is Dagan looking to protect through its objections? The answer to that question is the very reason that the Subpoenas were issued, to identify the unlicensed laypersons that unlawfully managed and controlled the fraudulent scheme (who are identified in the Complaint as the John Doe Defendants), and to determine how they profited from the scheme. Plaintiffs respectfully request the Court issue an Order denying the motion to quash, and compel Dagan and Signature Bank, N.A. to provide documents responsive to the Subpoenas.

By way of background, this action arises from the Defendants' submission of millions of dollars of fraudulent billing seeking no-fault insurance benefits for psychological services purportedly provided by Gepp and billed through the Gepp Practice and Gepp Psychological (collectively, the "Gepp Entities"). GEICO contends, among other things, that beginning in October of 2020, the Gepp Entities obtained patients through the payment of impermissible kickbacks. In the Complaint, GEICO details how, with the aid of John Doe Defendants, (i) the Gepp Entities were operated on an itinerant basis from over thirty (30) no-fault clinics in the New York metropolitan area, where the patient referrals originated through no efforts of their own, and (ii) each of the clinics were controlled by unlicensed laypersons that provided access to the patient base in exchange for illegal financial arrangements, and

Honorable Marcia M. Henry
August 29, 2022
Page 2



that the financial arrangements, which were disguised as payments for various services, were actually "pay-to-play" arrangements that caused the unlicensed laypersons to steer Insureds to the Gepp Entities for medically unnecessary services. See D.E. 1, ¶¶ 36-48. Additionally, through discovery to date, Plaintiffs have learned that Gepp did not legitimately operate and/or manage the Gepp Entities and that the John Doe Defendants (i.e. the unlicensed laypersons) arranged to have the fraudulent billing "funded" and used collection attorneys, such as Dagan, to bill for and seek collection on the fraudulent bills from GEICO, and to distribute the money to themselves and others using the attorney IOLA accounts. Accordingly, GEICO issued the Subpoenas in aid of identifying the John Doe Defendants and identifying who actually controlled and profited from the fraudulent billing submitted to GEICO through the Gepp Entities. See D.E. 46-3 (the IOLA Subpoena); D.E. 46-4 (the Dagan Subpoena).

Pursuant to Fed. R. Civ. P. 45, a subpoena issued to a non-party is subject to the relevancy requirements of Fed. R. Civ. P. 26(b)(1). See Ford Motor Credit Co. v. Meehan, 2008 U.S. Dist. LEXIS 53192, *12 (E.D.N.Y. July 11, 2008). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." Jalayer v. Stigliano, 2016 U.S. Dist. LEXIS 135288 at *2 (E.D.N.Y. Sept. 29, 2016). Additionally, "[a] court must quash or modify a subpoena that 'requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden.' Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv). "[T]he party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." Neogenix Oncology, Inc. v. Gordon, 2017 U.S. Dist. LEXIS 49293 at * 8 (E.D.N.Y. Mar. 31, 2017)(internal citation omitted); see also Sea Tow Int'l, Inc. v. Pontin, 246 F.R.D. 421, 424 (E.D.N.Y. 2007).

Here, GEICO issued the Subpoenas specifically seeking documents from Dagan and from Signature Bank solely relating to Gepp and the Gepp Entities, and temporally limited them to the same time period as the fraud alleged in the Complaint. See D.E. 46-3, 46-4. Furthermore, the subpoenaed records are extremely relevant to: (i) identifying the John Doe Defendants who controlled and profited from the fraudulent scheme; and (ii) establishing certain claims set forth in the Complaint, i.e. that Gepp and the Gepp Entities entered into financial relationships for payment and submitted bills to GEICO when they were ineligible to collect no-fault insurance benefits. Dagan was one of several attorneys that represented Gepp Psychological in "No-Fault" collection matters (see D.E. 46, ¶ 6) and received payments on behalf of the Gepp Entities that were deposited into its IOLA account. The distribution made from Dagan's IOLA account, of money held in the name of the Gepp Entities is directly related to identifying the individuals who profited from the fraudulent scheme. Furthermore, the requests for documents and written communications related to Dagan's representation of Gepp and the Gepp Entities are directly related to identifying the individuals who: (i) participated in the unlawful financial arrangements; and (ii) unlawfully controlled and profited from the operation and management of the Gepp Entities.

Against this backdrop, Dagan's motion to quash is nothing more than a boilerplate filing containing non-specific arguments that the Subpoenas are over-broad and seek documents that are protected by attorney-client privilege. See D.E. 46. Notably, Dagan's motion does not allege that the documents



are unduly burdensome, and no specific details or factual support are provided in an effort to support the objections that are actually asserted. For example, Dagan incorrectly argues that the Subpoenas are not "sufficiently specific". It provides absolutely no detail or facts to support the objection and cites to criminal cases not applicable in this civil action. See D.E. 46, ¶¶ 27-31. Dagan cites to United States v. Weisberg, 2011 U.S. Dist. LEXIS 37221 (E.D.N.Y. Apr. 5, 2011) and United States v. Skelos, 2018 U.S. Dist. LEXIS 83480 (S.D.N.Y. May 17, 2018), which involve subpoenas issued under Fed. R. Crim. P. 17. In fact, the Court in United States v. Weisberg noted that subpoenas issued in civil cases permit broader discovery than that allowed under Fed. R. Crim. Proc. 17. 2011 U.S. Dist. LEXIS 37221 at *9 - *11. Beyond Dagan's misplaced reliance on criminal cases, its objections are wrong. The Subpoenas are sufficiently specific as they identify the documents and written communications being sought, and are temporally limited in scope to October 1, 2020, to the present, which is the time period encompassed by GEICO's Complaint. See D.E. 1, ¶ 36. Moreover, the Subpoenas (and especially the IOLA Subpoena) seek records only pertaining to Gepp and the Gepp Entities. Accordingly, the Subpoenas are properly tailored to seek relevant information.

Dagan's motion also incorrectly claim that the Subpoenas seek information that is "privileged and confidential" and "attorney-client work product". See D.E. 46, ¶ 28. Notably, when moving to quash a subpoena, "[t]he burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it". Gov't Emples. Ins. Co. v. Mayzenberg, 2018 U.S. Dist. LEXIS 235221 at * 4. "A showing that the privilege is applicable and has not been waived must be based on competent evidence, usually through affidavits, deposition testimony, or other admissible evidence." Bloomingburg Jewish Educ. Ctr.  v. Vill. of Bloomingburg, 171 F. Supp. 3d 136, 143 (S.D.N.Y. 2016) (internal quotations omitted). Issuing conclusory statements that the subpoena seeks attorney-client privilege is insufficient to prove the applicability of the attorney-client privilege. See Mayzenberg, supra, at * 4 - * 5; Bloomingburg Jewish Educ. Ctr., 171 F. Supp. 3d at 142-143 (denying motion to quash because attorney-client privilege objections were conclusory as the movant did not provide a privilege log, proffered documents for an in-camera review, and did not describe the potentially privileged documents or communications with any particularity). Dagan's motion makes no effort to establish a factual basis for the application evidence of the attorney-client privilege, and, thus, the objection should be rejected on this basis alone. In fact, the Subpoenas do not seek any documents that arguably fall within the attorney-client privilege, as the requests seek documents that include underlying facts (not communications for the purposes of providing legal advice), which are not privileged. See Edebali v. Bankers Standard Ins. Co., 2017 U.S. Dist. LEXIS 110665, at * 11 (E.D.N.Y. July 17, 2017).

Dagan's motion ignores numerous decisions in this District that have held, under similar circumstances, that third party subpoenas seeking bank records and records from the third-party itself pertaining to the collection and distribution of insurance proceeds are proportionally relevant and permissible. See, e.g., Gov't Emples. Ins.  Co., et al. v. Yoo, M.D. et al., E.D.N.Y. Case No. 18-cv-05735, Text Order (E.D.N.Y. April 11, 2019); Gov't Emples. Ins. Co. v. Mayzenberg, 2018 U.S. Dist. LEXIS 235068 (E.D.N.Y. June 29, 2018); Allstate Ins. Co. v. Elzanaty, 2012 U.S. Dist. LEXIS 171962 at * 4 – * 5 (E.D.N.Y. 2012). No different result here is warranted.

Plaintiffs respectfully request the Court issue an Order denying the motion to quash in its entirety, and compelling Dagan and Signature Bank to respond to the Subpoenas.

Honorable Marcia M. Henry
August 29, 2022
Page 4



We thank the Court for its continuing attention to this matter.

Very truly yours,
RIVKIN RADLER LLP

/s/ *Michael Vanunu*

Michael Vanunu

CC:     All counsel of record (via ECF)